**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MORTGAGE BANKERS ASSOCIATION, <br> 1717 Rhode Island Avenue, NW <br> Suite 400 <br> Washington, DC 20036 <br><br> Plaintiff, <br> v. <br><br> HILDA L. SOLIS, sued in her official capacity, <br> Secretary <br> United States Department of Labor <br> Frances Perkins Building <br> 200 Constitution Avenue <br> Washington, D.C. 20210 <br><br> NANCY LEPPINK, sued in her official capacity, <br> Deputy Administrator <br> United States Department of Labor <br> Wage and Hour Division <br> Frances Perkins Building <br> 200 Constitution Avenue <br> Washington, D.C. 20210 <br><br> UNITED STATES DEPARTMENT OF LABOR <br> Frances Perkins Building <br> 200 Constitution Avenue <br> Washington, D.C. 20210, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiff MORTGAGE BANKERS ASSOCIATION ("MBA") seeks declaratory and injunctive relief against Defendants HILDA L. SOLIS, in her official capacity as Secretary of the United States Department of Labor, NANCY LEPPINK, in her official capacity as Deputy Administrator of the Wage and Hour Division ("WHD") of the United States Department of

Labor, and the UNITED STATES DEPARTMENT OF LABOR (collectively, "Defendants" or "DOL") for violating Federal law.

2. This civil action seeks judicial review of Defendants' issuance of Department of Labor Administrator Interpretation 2010-1 ("the AI"). The MBA brings this action under Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

3. The MBA seeks an order from this Court declaring unlawful, vacating, and enjoining implementation of the AI.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 (Federal question jurisdiction) and the APA, 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof").

5. Venue is proper in the U.S. District Court for the District of Columbia under 28 U.S.C. § 1391(c) in that (i) Defendants reside in the District of Columbia, (ii) a substantial part of the events giving rise to this claim occurred in the District of Columbia, and (iii) the Plaintiff resides in the District of Columbia.

6. This Court can grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the APA, 5 U.S.C. § 706, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

## PARTIES

7. Plaintiff MORTGAGE BANKERS ASSOCIATION ("MBA") is the national association representing the real estate finance industry, an industry that employs more than 280,000 people in virtually every community in the country. Headquartered in Washington,

D.C., the association works to ensure the continued strength of the nation's residential and commercial real estate market, to expand home ownership and extend access to affordable housing to all Americans.  MBA is an organization dedicated to helping its members do their business and actively advocates for its members.  The MBA has over 2,200 member companies, including all elements of real estate finance:  mortgage companies, mortgage brokers, commercial banks, thrifts, life insurance companies, and others in the mortgage lending field.

8. Congress has granted the Secretary of Labor, Defendant HILDA L. SOLIS, the power to administer the FLSA.  *See* 29 U.S.C. § 204.  The Office of the Secretary of Labor is located in the Department of Labor in Washington, D.C.  Defendant Solis is sued in her official capacity.

9. Pursuant to specific delegations of authority from Congress, Defendant THE UNITED STATES DEPARTMENT OF LABOR ("DOL") is the federal agency charged with the administration and enforcement of many of the federal labor laws, including the FLSA.  *See* 29 U.S.C. § 204.  Congress also granted DOL specifically defined authority to promulgate regulations interpreting the FLSA, after providing for public notice and an opportunity for public hearings.  *See* 29 U.S.C. § 213(a)(1).  DOL is headquartered in Washington, D.C.

10. The FLSA also authorizes the creation in the Department of Labor of a Wage and Hour Division (WHD) under the direction of an Administrator.  *See* 29 U.S.C. § 204.  Because the position of Administrator presently is vacant, Defendant NANCY LEPPINK, Deputy Administrator, is responsible for promulgating the AI.  *See* http://www.dol.gov/dol/contact/contact-phonekeypersonnel.htm (last visited Jan. 11, 2010); AI at 1 ("Issued by Deputy Administrator Nancy J. Leppink").  The Office of the Deputy Administrator is in the WHD, in DOL in Washington, D.C.  Defendant Leppink is sued in her official capacity.

## STATUTORY AND REGULATORY FRAMEWORK

### A. Fair Labor Standards Act

11. The FLSA requires that employers covered by the statute pay overtime wages to employees who work more than 40 hours per week, unless they are specifically exempted from overtime pay requirements. 29 U.S.C. § 207(a)(1).

12. The FLSA exempts from its overtime pay requirements any employee employed in a bona fide administrative capacity, as that term is "defined and delimited from time to time by regulations of the Secretary [of Labor], subject to the provisions of [the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq.] . . . ." 29 U.S.C. § 213(a)(1).

13. The Portal-to-Portal Pay Act provides a "safe harbor" from liability for legal violations for employers who act "in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Administrator of the Wage and Hour Division of the Department of Labor] . . . ." 29 U.S.C. § 259(a), (b)(1).

### B. DOL Actions

14. In 1938, when the FLSA was passed, DOL promulgated regulations defining and delimiting the FLSA's exemptions from overtime pay requirements. From time to time thereafter, DOL has amended those regulations. Most recently, DOL amended those regulations effective August 23, 2004.

15. From at least as early as 1964 until March 24, 2010, DOL announced interpretations of the FLSA by publicly issuing written "Opinion Letters" in response to questions from private parties about the application of the FLSA. Opinion Letters are widely disseminated via legal research tools, and are posted on DOL's website under the heading "Interpretive Guidance."

16. The D.C. Circuit has held DOL Opinion Letters to constitute final agency action


subject to judicial review. *See National Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 701-02 (D.C. Cir. 1971).

17. Beginning on March 24, 2010 with the AI challenged herein, DOL changed its practices for formulating and announcing its interpretations of the FLSA.

18. Since March 24, 2010, DOL no longer issues Opinion Letters in response to parties' inquiries.

19. Since March 24, 2010, DOL issues *sua sponte* "Administrator Interpretations" without prior notice or any opportunity for public comment or public hearings.

20. The stated purpose of these Administrator Interpretations is to "provide meaningful and comprehensive guidance and compliance assistance to the broadest number of employers and employees." *See* http://www.dol.gov/whd/opinion/opinion.htm (last visited Jan. 11, 2011).

## FACTUAL BACKGROUND

21. Effective August 23, 2004, DOL promulgated a regulation providing that, "Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption." 29 C.F.R. § 541.203(b).

22. The Preamble to the 2004 Regulations clarifies what DOL intended the regulations to mean at the time of their promulgation. *Defining and Delimiting the Exemptions*

*for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22,122 (Apr. 23, 2004) (the "Preamble").  In the Preamble, DOL clarifies that, "many financial services employees qualify as exempt administrative employees, *even if they are involved in some selling to consumers*.  Servicing existing customers, promoting the employer's financial products, and advising customers on the appropriate financial product to fit their financial needs are duties directly related to the management or general business operations of their employer or their employer's customers, and which require the exercise of discretion and independent judgment."  69 Fed. Reg. at 22,146 (emphasis added).

23. On September 8, 2006, DOL issued to Plaintiff MBA an Opinion Letter in which it opined that a mortgage loan officer whose job duties were to "work with the employer's customers to assist them in identifying and securing a mortgage loan that is appropriate for their individual financial circumstances . . . respond to and follow up on customer inquiries (sometimes referred to as 'leads') that come from several sources . . . collect and analyze the customer's financial information and assess the customer's financial circumstances to determine whether the customer and the property qualify for a particular loan . . . advise the customer about the risks and benefits of the loan alternatives . . ." and whose job duties included a sales component including both "customer-specific persuasive sales activity, such as encouraging an individual potential customer to do business with his or her employer's mortgage banking company rather than a competitor, or to consider the possibility of a mortgage loan if they have not expressed prior interest" and "marketing, servicing or promoting the employer's financial products. . . [by] marketing of the employer's mortgage banking company or products generally, as well as the promotion of brand awareness and the creation of demand among realtors, builders, developers, and other entities" had a primary duty *other than* sales, and satisfied the

traditional duties requirements of the administrative exemption by performing "office or non-manual work directly related to the management or general business operations of the employer." *See* Opinion Letter 2006-31, 2006 DOLWH LEXIS 42, *1, 4-6 (Sept. 8, 2006) ("2006 Administrator Opinion Letter"); http://www.dol.gov/whd/opinion/FLSA/2006/2006_09_08_31_FLSA.pdf (last visited Jan. 11, 2011).

24. In reliance upon DOL's aforementioned definitive interpretations, employers in the financial services industry, including many members of MBA, have classified mortgage loan officers as exempt employees.

25. As exempt employees, mortgage loan officers generally are *not* paid hourly or overtime wages, but are well-compensated by other means, including salary, bonus and commissions.

26. On March 24, 2010, in an abrupt reversal of its long-standing interpretation, DOL issued a *sua sponte* Interpretation expressly withdrawing the 2006 Administrator Opinion Letter regarding the exempt status of mortgage loan officers (as well as a 2001 Opinion Letter (2001 DOLWH LEXIS 5 (Feb. 16, 2001))), and declining to apply its own 2004 regulation, 29 C.F.R. § 541.203(b).

27. In sharp contrast to DOL's definitive interpretation, the AI declared that a mortgage loan officer whose hypothetical "typical" job duties were to "receive internal leads and contact potential customers or receive contacts from customers generated by direct mail or other marketing activity . . . collect required financial information from customers they contact or who contact them, . . . assess the loan products identified and discuss with the customers the terms and conditions of particular loans, trying to match the customers' needs with one of the company's loan products . . ." had a primary duty of *non-administrative-exempt* sales, and did

*not* qualify for the FLSA's administrative exemption.  AI at 1-2.

28. DOL has admitted that "AI 2010-1 represents a substantial change in the Department's interpretation [of its own regulation] . . . ."  *See* Brief of the Secretary of Labor as Amicus Curiae at 27-28, *Henry v. Quicken Loans, Inc.*, No. 04-40346 (E.D. Mich.) Doc. No. 609 (copy attached as Exh. A).

29. DOL has also acknowledged that "AI 2010-1 unambiguously represents a substantive change in the Department's interpretation of its administrative exemption regulations in determining whether mortgage loan officers are exempt administrative employees."  *Id.* at 26.

30. According to DOL, AI 2010-1 is *not* "merely a clarification of a regulation," but "unambiguously represents a substantive change in the Department's interpretation of its administrative exemption regulations in determining whether mortgage loan officers are exempt administrative employees."  *Id.* at 26-27.  AI 2010-1 does *not* merely "restate[] what the law according to the agency is and has always been."  *Id.* at 28 n. 11 (quoting *Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993)).

31. DOL issued the March 24, 2010 AI without any prior public notice of its intent to reverse its long-standing interpretation of the FLSA.

32. DOL issued the March 24, 2010 AI without providing any prior opportunity for MBA or other interested parties to comment on the new interpretation.

33. DOL issued the March 24, 2010 AI without conducting or offering to conduct, any prior public hearings.

34. Interested parties, including many of MBA's members, now face substantial exposure from private-party litigation alleging that well-compensated mortgage loan officers are misclassified and are entitled to collect both back overtime wages and penalties.  MBA's

members also now face increased unnecessary regulatory burden.  The costs of this litigation and regulation will be borne by consumers.

## CLAIMS FOR RELIEF

## COUNT I

35. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 34 of this Complaint, as though fully set forth below.

36. Once an agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself:  through the process of notice and comment rulemaking.  *Paralyzed Veterans of Am. v. D.C. Arena*, 117 F.3d 579, 586 (D.C. Cir. 1997); *see also, e.g.*, *Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 475 (D.C. Cir. 2007); *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 997 (D.C. Cir. 2005).

37. "If the notice and comment rulemaking requirement applies, the agency must publish notice in the Federal Register, including information as to the 'time, place, and nature' of the proceedings; reference to the appropriate legal authority and the 'substance of the proposed rule or a description of the subjects and issues involved.'"  *Montefiore Med. Ctr. v. Leavitt*, 578 F. Supp. 2d 129, 133 (D.D.C. 2008) (citing 5 U.S.C. § 553(b)(1)-(3)).  The agency must also "give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments."  *Id.* (citing 5 U.S.C. § 553(c)).  Only once these requirements are satisfied can an agency promulgate a new rule, regulation or interpretation.  *Id.*

38. An agency's action violates the APA where it constitutes a change in the agency's definitive interpretation made without following the required notice-and-comment procedures. *See, e.g.*, *Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1034 (D.C. Cir. 1999).

39. Prior to March 24, 2010, DOL definitively interpreted the FLSA's administrative exemption to include individuals performing the job duties that it describes in the AI as the

"typical" job duties of a mortgage loan officer.

40.  Prior to March 24, 2010, DOL definitively found that the job duties described in the AI as the "typical" job duties of a mortgage loan officer were administrative exempt job duties, not non-administrative-exempt sales.

41.  By its March 24, 2010 AI, DOL purported to reverse and withdraw its definitive interpretation, and instead declare that the same job duties are non-administrative-exempt "sales," such that mortgage loan officers performing those job duties do not qualify for the administrative exemption.

42.  DOL has admitted that the AI represents a "substantial" and "substantive" change in DOL's interpretation of its administrative exemption regulation in determining whether mortgage loan officers are exempt administrative employees, and that the AI is not a mere clarification of a regulation.

43.  The March 24, 2010 AI reversed DOL's definitive interpretation and should not have been issued absent compliance with the notice-and-comment rulemaking requirements of APA § 553.

44.  Accordingly, Defendants have violated APA § 553 through the issuance of the AI, which is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and issued without observance of the procedure required by law.

45.  Plaintiff has no adequate administrative remedy for DOL's unlawful action as described herein.

## COUNT II

46.  Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 45 of this Complaint, as though fully set forth below.

47.  "The APA commands reviewing courts to 'hold unlawful and set aside' agency

action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994) (citing 5 U.S.C. § 706(2)(A)).

48.     "It is well established that agency regulations have the force of law and an agency is not free to disregard its regulations at will." *Action on Smoking and Health v. DOL*, 107 F.3d 901, 902 (D.C. Cir. 1997) (citing *United States v. Nixon*, 418 U.S. 683, 695 (1974) (concurring opinion on denial of rehearing *en banc*)). Rather, "an agency issuing a legislative rule is itself bound by the rule until that rule is amended or revoked." *Nat'l Family Planning & Reprod. Health Ass'n. v. Sullivan*, 979 F.2d 227, 234 (D.C. Cir. 1992) (citing *Nixon*, 418 U.S. at 695-96); *see also, e.g.*, 2 KENNETH C. DAVIS ADMINISTRATIVE LAW TREATISE § 7.21 at 99 (2d ed. 1979) ("Since legislative rules when valid have the effect of a statute, the proposition that they bind the agency that issues them is hardly surprising.").

49.     DOL has interpreted its own regulations defining and delimiting the administrative exemption in a manner that is contrary to the plain language of 29 C.F.R. § 541.203(b), as well as to the Preamble's discussion of DOL's intent at the time that it promulgated the 2004 regulations.

50.     Because the AI conflicts with existing DOL regulations, and because those regulations have been afforded the force of law by courts, DOL's issuance of the AI is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

51.     Accordingly, Defendants have violated the APA § 706 by the AI's promulgation.

52.     Plaintiff has no adequate administrative remedy for DOL's unlawful action as described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MBA respectfully requests this Court enter judgment in its favor and:

1. Declare that Defendants violated the APA in issuing the AI without prior notice and opportunity for public comment;

2. Declare that the AI is arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law;

3. Vacate and set aside the AI;

4. Enjoin and restrain Defendants, their agents, employees, successors, and all persons acting in concert or participating with them from enforcing, applying, or implementing (or requiring others to enforce, apply, or implement) the AI;

5. Award Plaintiff its costs of litigation, including reasonable attorney's fees; and

6. Grant Plaintiff such other relief as may be necessary and appropriate or as the Court deems just and proper.

Dated: January 12, 2011

Respectfully submitted,

*/s/ Michael Steinberg*
_____
MORGAN, LEWIS & BOCKIUS LLP
Michael W. Steinberg (D.C. Bar #964502)
Howard M. Radzely (D.C. Bar #437957)
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 739-5141

Samuel S. Shaulson
101 Park Avenue
New York, NY 10178
(212) 319-6718

Counsel for Plaintiff
MORTGAGE BANKERS ASSOCIATION